Good morning, Your Honor. Eric Scharf on behalf of Lemartec. This court is confronted with an unusual situation in which Lemartec's initial brief demonstrated error in the contractual lens in which the district court used to resolve the dispute. A prior approach to the deal anticipated bidders setting a price for fabricating Lemartec's design of a conveyor system. ACT came along and said, effectively, we can build a better mousetrap. We'll have a better design. We'll have our own professional Iowa engineers. Then we'll also fabricate it. The new deal is formalized in a purchase order. The district court's incorrect contractual lens was one of incorporation by reference in which the bid package became part of the contract memorialized in the purchase order. But of course, the purchase order, the undisputed contract, makes no reference to the bid package. And that makes the district court's approach legal error under Iowa law, which requires a clear... Let me ask you about this sentence. The district court says, and I'm quoting, the delays and the need for on-site modification were the direct result of Lemartec's inadequate supervision and management of the project. That's a quote. It is. And it's kind of a finding of fact, and we kind of have to find it clearly erroneous to tell us... Of course, you can disagree with my premises there, but assuming that it is a finding of fact and assuming that it has to be clearly erroneous, why is it clearly erroneous? Because the district court is viewing the facts through the incorrect contractual lens. When you look at the issue of delay or problems in the management of the contract, that critically depends upon what the court understands the relative contractual obligations of the parties are. When the district court understood as to be bound by the bid package, it understood as to be bound by the AISC code, the Steele Institute code. So the district court understood as to have taken on contractual obligations and roles that we didn't take on. This is most acutely felt in the issue of delay, because the court understands as to have undertook an engineering role or design role where we have to formally approve ACT's drawings and bless them to start work. And we didn't. The difference is that before we, LamarTech, were the designer and engineer. In the new deal, ACT is a designer and engineer. We look to ACT to approve its own drawings through a professional engineer. So when the district court made those findings, it was looking, using the wrong yardstick in effect, contractually. And when the contractual lens has changed, when the AISC drops out, those findings and the understanding of who is responsible for the problems in the project can and should change radically. And that, of course, is all we're seeking in this, is a very limited relief of vacating the order, remanding for further proceedings in which we try to make that case directly to the district court that sat through all these facts. Counsel, could the AISC code be applicable here by usage of trade rather than incorporation? It's a great question. It requires an answer in a couple different levels. First level is it wasn't actually applied through usage of trade. I understand your question is could it be? And that reaches the question of whether you can secure, whether ACT can secure affirmance on alternate grounds. They can't. There are a number of substantive reasons why the AISC should not apply. The single broadest way to understand that is the AISC is a technical manual. It has hundreds of pages on how to bolt and clip and weld together pieces of steel. It applies in the narrow context where somebody is fabricating something out of steel. The party's deal, the broader deal, had ACT designing and engineering and then fabricating. And those first two components, the AISC can't govern those. In particular, the requirement to have a professional engineer in Iowa. The steel code doesn't govern professional engineering codes and couldn't trump Iowa professional engineer expertise. But I want to come back to a broader point. Could this court affirm on alternate grounds? Of course, the court can do what it wants as a matter of power. It shouldn't. And here's why. This is the most key reason why. The district court was asked to do precisely this. ACT and proposed findings of fact, docket entry 169, right after trial said, court, find that there's a trade custom and find that governs. And the district court declined to do so. That didn't expressly decline though, right? Did it? That's why I used the word decline. Yeah, no, no, no. My question was an honest one. It did not expressly decline, right? That is correct. The district court did not say, I hereby reject trade usage. It just didn't use it. And instead it, it, it used the words Lamarck is bound when it expressly stated that the terms of the bid package were included in any subsequent contract. So it seemed to be relying on a corporation rather than a factual finding on usage of trade. And in fact, your honor, I'm glad you phrased it that way because that's exactly right. The reason we know that with, with certainty is the words I just read you come from page five of the court's order. They come to immediately after the heading that reads conclusions of law, whatever else we know, an alternate ground affirmance on trade usage would lie through findings of fact because both parties briefs explain this trade custom is a, is a factual issue. This court says a steadfast rule against finding facts on appeal. It would be even doubly more imperative not to do so where a district court were asked to find those facts first and declined following judge Benton's comment, declined, but didn't expressly reject that exact finding. The same can be said for ACT's argument on extrinsic evidence. Again, the district court, whatever else we know, neither extrinsic evidence nor trade custom are anywhere to be found in this order. So you cannot affirm the order on the basis of that. But Iowa law does have a pretty liberal view of allowing a court to look at extrinsic evidence, doesn't it? I don't know about liberal. I think I would characterize it as, as pretty much the same rule throughout the entire United States. There's a rubric for that, which you see in both federal and state courts. The first step in all of that is always a finding, an express finding of ambiguity, which requires the two sides to have different views of a particular term in a contract and both of those views to be reasonable. At that point, there's ambiguity. At that point, it is then legitimate to take extrinsic evidence. And that first step, the initial step of ambiguity didn't happen here. And here I'm going to quote directly from ACT's appellee response brief in page 16, footnote one, to the extent the district court did not expressly address the contract terms as a legal matter, something we would agree with, including whether it was ambiguous such that the district court would determine the terms as the fact finder, the district court can hardly be blamed considering how the case was presented to the court by the parties. The parties did not argue, here's the ambiguity, go take extrinsic evidence and consider it. Now, was there evidence that in a tactical sense could be considered extrinsic? Of course, but that evidence was evidence of the performance, the court's hearing testimony about what happened in the actual building of this project. But that can't be confused with a parole evidence analysis that starts with a determination of ambiguity, takes in evidence that bears upon that ambiguity and ends with a finding of fact by the court saying, you know what? There were two ships called the Peerless. And you've got a ship manifest here showing that this ship, Peerless, was in Indonesia when this ship was in Manila Bay. So it must be this ship you're talking about. That is extrinsic evidence. We all know it when we see it. And whatever else we know, it is not in this order. Following up on that, we also know that extrinsic evidence is by definition evidence. So it runs squarely up against the prohibition of this court against finding facts on appeal. It would be an evidentiary ruling, not a factual ruling. And ACT cites cases, examples of cases, Tony Alamo and Nationwide Insurance for affirmance on alternate grounds. Well, those are younger abstention and motion to dismiss cases where something could be decided on the pleadings where there wasn't a factual issue. Here, there's been a full bench trial. And many of the findings of fact that ACT is now urging on this court as an alternate because they didn't find their way into the order. And there were good reasons for them not to find their way into the order. It's difficult in the space of a five-minute or a 10-minute argument to express all the factual shortcomings with the AASC code and how it shouldn't apply to a deal which shifted from just straight fabrication to engineering and design. I would have to rest on the brief for that. And I'm drawing very, very, very close in the time here as I wanted to reserve a substantial amount for rebuttal. But I want to emphasize the relief we're seeking is extremely limited, vacating the order, remanding for further proceedings consistent with that. And that will allow ACT, that will preserve to ACT all of these arguments. If ACT really believes that trade custom, that the district court just overlooked trade custom and didn't expressly reject it per Judge Patton's comment, ACT is free to urge that on the district court. Of course, if we lose here today, we don't have that same opportunity. And the injustice done to us is the decision couched in terms of incorporation by reference is wrong as a matter of Iowa law. And all of those findings of fact that are attendant to that, that use that contractual  And all we ask for is the chance to do that. I'm going to try to reserve the rest of my time. Sure, you may. Ms. Oxley. Good morning. May it please the court. There's a fundamental disagreement about the legal basis for the district court's findings. But appellate courts review judgments, they do not review opinions. So it's important to focus on the critical findings that were made by the district court. And the two that are at issue in this appeal are the district court's finding, first, that ACT was reasonable in withholding fabrication until Lamar Tech approved its drawings. And second, that Lamar Tech implemented a fast track delivery methodology, under which Lamar Tech then took on the risk of cost overruns. The parties presented theories and evidence, but they did not ask the district court to identify the specific legal basis for finding specific terms in the agreement. Lamar Tech now attempts, after a four-day trial to the bench, to limit this court to only looking at the terms of the agreement in the purchase order on a legal issue that it itself did not even raise to the district court. So, looking to the district court's order, the word incorporation is never used. Lamar Tech itself relies on the... Well, the district court comes close with the sentence, Lamar Tech is bound by the words it used when it expressly stated that the terms of the big bid package were included. That's a mistake, right, Ms. Oxley? But it's not an incorporation by reference. What the court said was, immediately before that... Included in a subsequent document. Completely agree that he is looking at the bid package. When you're looking at an ambiguous contract, and I don't know how you can get up here and say that there was no ambiguity. If you look at the case, that kind of brings me to the standard review. I don't mean to dodge your question and I'll get to it, but... I think you answered it. Included means incorporated. Go ahead. Exactly. And so, when you look at the case by this court, there was no express finding of ambiguity. What the appellate court said was, the district court held a hearing and heard extrinsic evidence, which necessarily meant that the district court found an ambiguity. There was four days worth of extensive testimony. This is a bench trial. There were numerous depositions that were offered that the court read outside of those four days. There were over 100 exhibits. The fighting issues were the meaning of specific terms in the purchase order, including things like, what does applicable code mean? Who is the architect and engineer? Lamarteck argued below, and it's repeated that argument here, that the parties scrapped the bid package when ACT gave its proposal. But again, the district court did make a very specific finding as to that point, when on page three, the district court said, Lamarteck submitted a bid pursuant to the bid package. And that brings me back to your question, Judge Benton. When you're construing ambiguous contracts, the things that you look at, which is pretty black-letter law across the country, include things like the party's prior negotiations and the statements that were made in those, usage of trade, and the party's understanding. There was significant evidence about the party's understanding about what those different terms meant. On page five of the district court's order, right, I don't have his order with me, but either right before or after he's talking about the bid package, he says, ACT was reasonable in expecting Lamarteck to follow the procedure it had specifically laid out in soliciting bids and on which ACT had relied in preparing its bid. The district court is talking about the process, the prior negotiations of the parties to get to the purchase order that they ultimately entered into. Counsel, how does that square with Iowa case law unincorporation? Unincorporation? My point there is that the court was not incorporating by reference the entire bid package. What about the AISC code? So the purchase order referred to applicable codes. And actually, the district court, in a separate paragraph, says the AISC code applies and doesn't say why. Earlier in the opinion, he does reference that the bid package said the AISC was the applicable code. But again, in construing an ambiguous contract, when the purchase order just says applicable code and it doesn't define what those are, but the prior negotiations of the parties, specifically as the district court found, the bid package that Lamarteck had used to ask for the bids and that ACT had relied on in preparing its bid, when that specifically states the AISC is the applicable code, then that is a district court interpreting what applicable codes means in the very purchase order, which is the contract. What I'm trying to figure out is where the line is in Iowa law between the case law unincorporation, which has some very strict limits, and Iowa case law on resort to extrinsic evidence. It seems to me we have a clash between those two lines of cases here. I need to know where the line is. I understand your question. I'm not sure that it's so much a clash. I think in the Iowa cases where incorporation is discussed, that is the front and center legal argument. And that kind of brings me back to a point that I started to make if I didn't make. Lamarteck never said to the district court, you can't use incorporation by reference because there are not clear and specific words in the purchase order, and you cannot look beyond the purchase order to determine what that is. They never made that legal argument. True, ACT did use incorporation as one of the legal methods that the court could have used, but it also identified usage of trade, as this court has, as your honor previously pointed out, and it also identified the intent of the parties, the ambiguity in the contract in determining what the parties meant. I would point the court to the Hoffmeyer case, which is an Iowa case dealing with, if I remember right, that's the one where the public defender had a contract and it just talked about, I can't remember the language exactly now, but it talked about something, the rulings that are adopted or rules that are adopted by the federal public defender. That was enough of a reference to the very specific Iowa administrative code section that had just recently been adopted, even though it didn't identify the administrative code even, it just said rules adopted by, and so to the extent that the court is looking for an Iowa case that addresses what it takes to be incorporated, I would suggest that that case supports... Again, the name of that case is? Hoffmeyer. Yeah, Hoffmeyer. That's the 640 Northwest. Right, right. What it said was the travel expenses will be paid to the extent specified by administrative rule. That was a specific language. All it said was it specified it by administrative rule and that was enough under Iowa law to incorporate a very specific Iowa administrative code. And in the same way here, the purchase order, with respect to whether or not the AISC applies, specified applicable codes. It says after the word code, it says requirements. Applicable code requirements. Is this code a requirement? Well, LamarTech wants to say it doesn't apply to us. We're not a steel manufacturer. We're not the ones that know anything about AISC. LamarTech is the one that identified the AISC in the bid package. It can't hardly say that it's not aware of the AISC. I think that whether or not the AISC codes our requirements and how far it goes and the argument that we heard a little bit earlier about how broad it is, is quite a bit beyond what this appeal is, which LamarTech has very diligently tried to limit. And so as a factual matter, whether or not the AISC should have applied, the district court heard very significant evidence about the AISC code, including the very same arguments that LamarTech is trying to make now to distance itself from the AISC code. And the district court found that the AISC code applied. And so whether or not it should have or should not have, it made that as a finding. And that has not been challenged, other than the source of where the AISC code, the district court's finding that the AISC code applied. And that, we submit, comes from the purchase order itself, which specifically says applicable codes. Requirements. Requirements. The words are applicable code requirements. Yes. Yeah, agreed. It is applicable code requirements. But when LamarTech is the one that said the AISC is going to apply in the bid package, and then ACT then prepares and submits its bid pursuant to that bid package, which is what the district court found, and LamarTech has already said that the AISC is going to apply, then it's pretty hard for LamarTech to now claim that it doesn't. Another point I'd like to make is that this purchase order is not integrated. LamarTech relied on that very fact in the district court, because it needed to bring in other things that were not in the purchase order. And so the fact that, I think that that's a pretty significant fact when you're talking about... Or weren't those other items specifically referenced? What other items? The non-integrated documents. At trial, this is getting much beyond what the appellate record is at trial, but one of the LamarTech officials expressly testified that it was not an integrated agreement, and it was because they were trying to get in... It had something to do with a subsequent delivery schedule that the parties argued about whether or not it was part of the contract. And that was not one of the listed identifiers. Again, the fact that the other statement or the other phrase in the purchase order that was litigated pretty heavily at the district court was the fact that ACT had to comply with the intent of the architect and engineer. And we heard this morning that LamarTech was originally going to be that, but that that changed under the ACT bid. Again, very significant evidence presented at trial about who was the architect. BRPH was the architect identified on the bid package. LamarTech's own witnesses testified that BRPH was still the architect. The delivery schedule that was included in the bid  had just a statement of weeks. One of those was the GA or general arrangement approval, and there was significant evidence about that approval process as well. And I think that there were a few... The intent says reasonable intent, right? Excuse me? The intent says reasonable intent... Exactly. ...of the architect engineer. Go ahead. Exactly. And there were a few other points that I wanted to make about the very specific findings that the district court made. And I think that goes to the point that this was a four-day trial, and the district court heard a significant amount of evidence and then put it into a six-page order. Did the district court identify every single thing that he considered or didn't consider or rejected? The fact that he didn't put something in it, as Your Honor pointed out, doesn't mean that he rejected it. He just didn't state it expressly. But the district court also made these fact findings on page three of its order. And this goes to the relevance of when the procedure that the district court had talked about that LamarTech had put in its bid package. The district court found that ACT prepared and submitted drawings to LamarTech, but LamarTech did not mark them as approved. That was the finding. LamarTech submitted changes in the boundary conditions to ACT throughout the summer as late as August 11th. And that was a very important finding by the district court. It found that the changes in the elevation is what actually caused the delays in the revisions to the design of the conveyor. And the district court expressly identified the testimony from George Wanling and Juan Cardenas, ACT's witnesses, as to the importance of the elevation. The district court also said that these changes to the boundary conditions then caused ACT to have to redesign its drawings. And then importantly, these specific findings followed directly from the district court's identification of that timetable that I mentioned in the purchase order, including the period for the general assembly approval drawings. I don't think LamarTech disputes that it was required to approve those drawings. And LamarTech also wants to kind of sit back and say, all we did was collect, our only obligation was to pay money. But that ignores LamarTech's whole role in this entire project. This is a very large project, over $100 million project. LamarTech was overseeing a number of different subcontractors who were working on building the entire physical plant. The conveyor was one small part of it. And as Judge Benton pointed out earlier, the district court judge expressly found that it was LamarTech's failure to supervise all of those various entities that really resulted in the delays. And that is the basis for the district court's judgment. And so we would ask that the district court, or that this court affirm the actual judgment of the district court and not get caught up in the minute legal issues that are addressed here. Thank you. Thank you, counsel. Mr. Scharf. We're not asking you to get caught up in the minutiae, we're asking you to get caught up in the overarching contractual lens through which the other facts were seen. When the court is evaluating the evidence and looking at performance and trying to assign blame for why there were problems with the project, the court understands us to be bound by things in the bid package that we did not consider ourselves bound by and we considered under a different approach to the deal, where we were not the designer and engineer. And that's the critical point here. Counsel, let me ask you a question. There was no integration clause, right? That is correct, your honor. And more importantly, there's this open-ended that everything here does not necessarily describe the full intent of the work or what's going to happen. And you've got to follow all these other things, including intent and applicable code requirements and all this stuff. My goodness, it seems like a free-for-all here in terms of contract law. Your honor, there probably should have been an integration clause, but it is a 38-page contract with eight separate schedules. And I want to, your question dovetails quite a bit with what counsel was saying there about, well, LamarTech introduced the AISC in the bid package. That is true. They did so at a point when they were devising something,  we want you to build us one of these, go manufacture this and tell us what it'll cost to do that. And to do that, you've got to follow the AISC. The entire world changes when ACT comes along and says we're conveyor experts. We can design, engineer, and fabricate, and do this much more global approach for you. And guess what? The parties then memorialize a different contract and that different contract drops the AISC. And whatever else we know under Iowa law and that of all 50 states, the intent of contracting parties is most clearly evidenced by what's in the written contract, or in this case, what is deleted. ACT was free if it thought that everything should be bound under AISC to try to reinsert that because the party's contract incorporates ACT's proposal. That's, I believe, exhibit eight to the contract. They could have inserted AISC. They didn't. Lamarck obviously intentionally took it out because it was in the first version, not in the second. But if I'm understanding what's happening now, it would seem that counsel conceded that the word included is a synonym for incorporated. And that- I think the dictionary did that, but go ahead. I agree. I think what we're ending up arguing about is the exact meaning of what the district court did in a five-page order. And again, I heard no response whatsoever to my point that all of what we're arguing about, the critical language we're relying on, comes under a heading that prominently reads conclusions of law, not findings of fact. Now, I agree there are findings of fact which are unfortunate for Lamarck's side. I would submit to you that they were made under the incorrect contractual lens. When you believe a party is held to certain contractual obligations to approve drawings or do other things, and then that doesn't happen, it's natural to want to assign blame to them for other problems in the project. But it all starts with the idea of what the contractual obligations are. May I ask one? Under your remand theory, what would our instructions be to the district court? Tell us what you meant or what? I don't think so, Your Honor. I think what you would do is vacate the order and remand for proceedings consistent. And what would that be? District judges sometimes criticize this. If you send it back for further proceedings, please tell us what you want us to do or what we want me as a district judge to do. One option is you could ask for clarification in the order of what the court's basis for decision was. But that, I think, is implicit in vacating. And I think if the court, the district court, upon remand and vacature, the first thing they're going to do is hold a status conference. And ACT will likely urge its points that it's trying to make here. Judge, you could have found on trade customer usage, right? And that would make us bulletproof because everyone knows you can't appeal a fact issue. So why don't you do that? And then you can hear from the horse's mouth, the district court who sat and heard this evidence, whether he's actually willing to do that. And we can focus our arguments on why he shouldn't do that. But getting- Counsel, your time's expired. Thank you for your answer. But I want to be sure Judge Woman is happy. No, no, thank you for your answer. Listen, thank you for the argument here today. Thank you, Your Honor. Case 18-2345 is submitted for decision. Ms. O'Keefe.